**The below described is SIGNED.**

**Dated: May 30, 2006**

**JUDITH A. BOULDEN
U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number:  06-20441 |
|---|---|
| **KRISTI LYN WILKINSON,** | Chapter 13 |
| Debtor. | |

**MEMORANDUM DECISION DENYING MOTION TO FIND
COMPLIANCE WITH 11 U.S.C. § 521 OR, IN THE ALTERNATIVE,
MOTION TO VACATE ORDER OF DISMISSAL**

As with this Court's decision in *In re Fawson*,[1] this Chapter 13 case again raises the issue of the extent of the Court's discretion regarding the automatic dismissal of a case under 11 U.S.C. § 521(i).[2]

## I.  BACKGROUND

The material underlying facts are undisputed.  The Debtor filed a Chapter 13 petition on February 21, 2006.  On that same day she attempted to comply with § 521(a)(1)(B)(iv) by filing

---

[1]  338 B.R. 505 (Bankr. D. Utah 2006).

[2]  Future statutory references are to title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), unless otherwise noted.

pay advices received from her employer, the Internal Revenue Service, purportedly for pay periods covering July 10, 2005 through February 4, 2006.[3] The Chapter 13 trustee was assigned to the case, and a hearing on confirmation and any filed objections was noticed for May 18, 2006.

The Court's review of the case in preparation for the confirmation hearing revealed a potential problem with the Court's continued jurisdiction over the case in that one pay advice for the pay period January 8, 2006 through January 21, 2006 was missing from the pay advices filed with the Court. In its place, an apparently erroneous pay advice covering January 9, 2005 through January 22, 2005 had been filed. If the Debtor had not complied with § 521(a)(1)(B)(iv), the case may have been automatically dismissed under § 521(i)(1).

The Debtor alleges that prior to the May 18, 2006 confirmation hearing, the Chapter 13 trustee presented the case to the Court for "confirmation without objection" pursuant to Local Rule 2083-1(h).[4] Specifically, Local Rule 2083-1(h) provides as follows:

> Any objection to confirmation must be filed and served not later than 10 days before the date set on Official Form 9I for the plan confirmation hearing. Such objection will be heard at the plan confirmation hearing, unless the court orders otherwise. If there are no timely filed objections to confirmation pending or if all objections to confirmation are resolved by a court order or a stipulation signed by the debtor, the trustee, and the objecting party, a plan **may** be confirmed without objection. If the plan is eligible to be confirmed without objection, the confirmation hearing **may** be stricken and an order confirming the plan entered. Debtors and the debtors' attorney are excused

---

[3] Section 521(a)(1)(B)(iv) requires only the pay advices or other evidence of payment received within 60 days of the petition date.

[4] Local Rule 2083-1(h) was originally promulgated as Local Rule 2083-1(g) by Standing Order Number 1, issued on June 6, 2005 and effective for all cases filed or converted to Chapter 13 after July 2, 2005. Local Rule 2083-1(g) became Local Rule 2083-1(h) due to renumbering in Standing Order Number 2, issued on September 20, 2005 and effective for all cases filed on or after the October 17, 2005 general effective date of the BAPCPA. The text of the Rule, however, remained unchanged.

>from the confirmation hearing **if** the plan will be confirmed without objection. (emphasis added)

Because of issues regarding the deficient filing of pay advices, and whether such cases had already been dismissed under § 521(i)(1) before their respective confirmation hearings, the Court has declined to permit certain confirmation hearings to be stricken and plans to be confirmed without objection.[5] In the present case, however, the Trustee's office caught the issue of the missing pay advice and never presented the case for confirmation without objection. The confirmation hearing was held as scheduled on May 18, 2006.

Immediately prior to the confirmation hearing, the Debtor filed a copy of the missing pay advice that she had received from her employer prepetition. At the hearing, Debtor's counsel presented argument as to why the Court should find either that the Debtor "substantially complied" with the requirements of § 521 or that the Court otherwise had discretion to not dismiss the case. The Chapter 13 trustee's counsel stated on the record that she had not and would not be making a request for entry of an order dismissing the case under § 521(i)(2), and no other party in interest has made such a request.

Based on the suggestion of Debtor's counsel, the Court gave the parties an additional period to brief the issues raised by the Debtor's failure to timely file all pay advices required by § 521(a)(1)(B)(iv). The Debtors timely submitted such a brief, styled as a Motion to Find Compliance with 11 U.S.C. § 521 or, in the Alternative, Motion to Vacate Order of Dismissal (Motion).[6] The Court has thoroughly reviewed the Motion in connection with the oral arguments

---

[5] This is not the only reason that the Court has declined to permit confirmations without objection, but it is the only reason relevant to the present case.

[6] The Chapter 13 trustee did not submit a brief.

made at the confirmation hearing. For the reasons stated below and those stated in *In re Fawson*, the Court finds that the Motion must be denied.

## II. DISCUSSION

The Court will address each of the Debtor's arguments in the Motion in turn. To the extent that a particular issue was already decided by *In re Fawson*, the Court will only briefly reference the matter and hereby incorporates the reasoning in the *Fawson* opinion into this Memorandum Decision.

A.  **Motion to Find Compliance with 11 U.S.C. § 521**

   1.  **The Debtor argues that a case is not dismissed unless a request is filed pursuant to 11 U.S.C. § 521(i)(2).**

Instead of directly attacking *Fawson*'s rejection of "the argument that 11 U.S.C. § 521(i)(2) is rendered superfluous by a strict reading of 11 U.S.C. § 521(i)(1)," the Motion alleges that *Fawson*'s reasoning "regarding the interplay of 11 U.S.C. § 521(i)(4) and 11 U.S.C. [§ 521](i)(1) and (2) is flawed." Specifically, § 521(i)(4) provides:

> **Notwithstanding any other provision of this subsection, on the motion of the trustee filed before the expiration of the applicable period of time specified in paragraph (1), (2), or (3)**, and after notice and a hearing, the court may decline to dismiss the case if the court finds that the debtor attempted in good faith to file all the information required by subsection (a)(1)(B)(iv) and that the best interests of creditors would be served by administration of the case. (emphasis added)

The Debtor argues that because § 521(i)(2) establishes a time period of five days after a party in interest requests that the Court enter an order dismissing the case and because

§ 521(i)(1) is "subject to" paragraphs (2) and (4), then there is no such thing as an automatic dismissal.[7] A case is to be held open indefinitely until a party in interest requests entry of a dismissal order. If no such request is ever made, the case is never dismissed. The Debtor also argues that § 521(i)(1) itself contains further support for the proposition that dismissal is not automatic, namely (1) that the words "shall be" imply a future rather than present event and (2) that there would be no need for the word "effective" if dismissal were truly automatic in the *Fawson* sense.

As an initial matter, the Court does not dispute that § 521(i) contains several drafting difficulties, some of the results of which have already been addressed by *Fawson*.[8] But inartful drafting, awkwardness, or even bad grammar does not necessarily produce ambiguity.[9] Even so, to the extent that the statutory interplay discussed by the Debtor does produce ambiguity, it is nevertheless the case that statutory provisions must be viewed in connection with the statute as a whole. In conjunction with what little legislative history exists for the BAPCPA, the Court is led to the same conclusion in this case as the conclusion reached in *Fawson*.[10]

---

[7] The Court notes that there are only a few other instances of "automatic" events in the Bankruptcy Code apart from imposition of the automatic stay upon filing. *See* §§ 365(p)(1), (p)(3), and 551; *cf.* § 362(h) and the hanging paragraph following § 521(a)(6). These provisions all seem to contemplate "automatic" events in the same sense in which *Fawson* analyzes the term, as occurring without any external intervention.

[8] To date, the most thorough discussion of these difficulties that the Court has located can be found in Neil M. Berman, *"Without Thought or Conscious Intention": An Analysis of the Dismissal Standards of 11 U.S.C. § 521(i)*, 2006 No. 05 NORTON BANKR. L. ADVISER 3 (May 2006). In addition to the concerns raised in this article, the Court would also note the curious absence of a reference to subparagraph (3) in § 521(i)(1).

[9] *See, e.g.*, *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

[10] *See, e.g.*, *In re Ott*, --- B.R. ----, No. 05-52803-SBB, 2006 WL 1152339 at *1 (Bankr. D. Colo. April 12, 2006) (discussing the "lens" through which Congress viewed debtors in enacting the

The statutory reading suggested by the debtors in *Fawson* was rejected not only because it would have rendered the automatic dismissal language of § 521(i)(1) meaningless but would also produce the absurd result that "secretly" dismissed cases would be left languishing on the Court's docket until a party in interest requested a dismissal order. Far from negating that absurd result, the Debtor's statutory reading that a case is to be held open indefinitely until a party in interest requests entry of a dismissal order would only exacerbate the absurdity. Case administration, debtor and creditor activity, and even judicial determinations would be permitted to continue subject only to a potential act by the Chapter 7 or Chapter 13 trustee in response to a potential § 521(i)(2) request for an order of dismissal. But if the trustee fails to timely move under § 521(i)(4) once a § 521(i)(2) request is made, or if the Court is unable to make the findings required by § 521(i)(4), then everyone has been operating in a case that was dismissed 46 days after the petition was filed. In addition to correctness, finality is of great importance in the bankruptcy process; the Debtor's statutory reading would lead only to wholesale uncertainty.

The additional support alleged by the Debtor from § 521(i)(1)'s use of the words "shall be" and "effective" is equally unconvincing. As this Court has itself recently noted, "[t]he term 'shall' is mandatory and generally acts as a command" that is impervious to judicial discretion.[11]

---

BAPCPA); *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990) ("Our starting point is the language of the statute, but in expounding a statute, we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.") (internal quotes and citations omitted). The Court also notes that despite the lack of a parallel reference to § 1307(c)(9) versus § 707(a) in § 521(i)(1), the Debtor does not argue and the Court finds no basis to conclude that the automatic dismissal provisions of § 521(i)(1) are not equally applicable in Chapter 13 cases.

[11]     *In re Cluff*, 313 B.R. 323, 331 (Bankr. D. Utah 2004); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion. Reading the statute whole, this Court has to give effect to this plain command . . . .").

When viewed properly as a specific directive rather than a temporal suggestion, the word "shall" does not lend support to the Debtor's argument.[12] The word "effective" is also of no assistance. As stated in the Berman article, cited *supra* at footnote 7, the word "automatic" as used in the statute is true only in the metaphysical sense that a case no longer exists as of a particular date. But "court systems simply do not operate automatically," and humans are tasked with the responsibility of determining whether a case is subject to § 521(i) dismissal which will necessarily occur only after the 45th day has run.[13] The word "effective" does no more than imply that a dismissal, once a determination is subsequently made as to the propriety of the dismissal under § 521(i), is "retroactively" applicable on the 46th day rather than the day that the determination was made.

The Court does its best to complete this process of determining which cases have been dismissed under § 521(i) correctly and in a timely fashion,[14] but there are inevitably cases in which a determination cannot be made until the Court receives some further guidance from the parties themselves. This is especially true in the present case in which it appeared that some but not all pay advices were filed.[15] There are many reasons why the filing could have been in complete compliance with § 521(a)(1)(B)(iv) — the Debtor may not have received pay advices during the

---

[12] There are many instances of the word "shall" in the Bankruptcy Code, including the first sentence of § 1325(a) ("[T]he court shall confirm a plan if —"). Among other consequences, the Debtor's view of the word "shall" would have the curious result of giving the Court discretion to confirm an otherwise eligible plan at some unspecified future date.

[13] Berman, 2006 No. 05 NORTON BANKR. L. ADVISER 3 (May 2006), Subheading "A."

[14] Even the procedure of providing deficiency notices to debtors only highlights documents that are not timely filed at all, and will not reveal if filed documents are legally deficient.

[15] *See Fawson*, 338 B.R. at 510 n.11 (addressing potential difficulties associated with such a scenario).

period at issue, all pay advices were in fact filed but the Court failed to locate them on the docket, or the like. Given the short time frame between expiration of the 45th day and the confirmation hearing, as well as the practicalities associated with the timing of the parties' and the Court's own preparation for confirmation hearings, there have been and will continue to be BAPCPA cases automatically dismissed under § 521(i)(1) in which the issue does not present itself until shortly before the confirmation hearing. It is practically impossible to resolve such issues prior to the confirmation hearing, and it is for this reason that the Court has declined to permit the confirmation hearing in cases similar to the present case to be stricken and the plan "confirmed without objection" pursuant to Local Rule 2083-1(h).[16] To be clear, as cited above, Local Rule 2083-1(h) gives the Court such discretion and is not the equivalent of a *sua sponte* § 521(i)(2) dismissal request by the Court.[17] It is precisely because of the automatic dismissal language of § 521(i)(1) that this Court has issued notices of dismissal rather than orders of dismissal until such time as a party in interest requests such an order.

The Debtor suggests in the Motion that the Court is never going to "catch" all missing pay advices. This is undeniably true.[18] That does not mean, however, that the Court must therefore

---

[16] Again, in the present case, the Trustee's office noticed the missing pay advice during the course of its own review and never presented the case for confirmation without objection. If the trustee had done so, however, the Court would have declined to permit the case to be confirmed without objection.

[17] Also, "like any federal court, the bankruptcy court has a duty to insure that its exercise of jurisdiction is appropriate." *Farah v. Richards (In re Farah)*, 278 B.R. 737, 740 (Bankr. D.N.J. 2002). It would be patently inappropriate for this Court to assist in the prosecution of a dismissed case over which it has no jurisdiction.

[18] For that reason, it is also quite likely that a plan will be confirmed in a case that was actually automatically dismissed under § 521(i)(1). Form plans in use in the District of Utah even contain boilerplate language to the effect that confirmation of the plan constitutes a binding determination that all § 521(a)(1) documents have been filed. The Court makes no ruling at this time as to whether this provision (or any similar provision) would have preclusive effect if a plan were erroneously confirmed in an

simply ignore its duty to ensure that statutory requirements are met when the issue presents itself.[19] At the same time, and despite the Court's best efforts to provide appropriate guidance and adequate notice (as with the issuance of deficiency notices), it is not the Court's responsibility to perform the statutory duties required of debtors and their counsel.[20]

> **2. The Debtor argues that the Court may find either that the Debtor complied with 11 U.S.C. § 521(a)(1)(B)(iv) through amendment or that the Debtor substantially complied with 11 U.S.C. § 521(a)(1)(B)(iv) in the first instance.**

As alternative bases for finding compliance with § 521, the Debtor argues either that the pay advice submitted at the confirmation hearing was simply an amendment to the original pay advices or that the Court should find "substantial compliance" with the statutory requirements. To do otherwise, the Debtor argues, is to elevate form over substance and to reduce the Court to a "mechanical, mindless tool." These arguments are brought under § 105(a) and are obviously equitable in nature.[21] But for substantially the same reasons as stated above, the Court finds that it has no discretion to produce an "equitable" result in this case. "Although § 105(a) of the Bankruptcy Code . . . authorizes bankruptcy courts to fashion such orders as are necessary to further the substantive provisions of the Code, that provision does not . . . empower bankruptcy

---

otherwise dismissed case, but the jurisdictional issues raised by automatic dismissal suggest that it would not.

[19]   *See, e.g.*, *In re Mkt. Res. Dev. Corp.*, 320 B.R. 841, 845 (Bankr. E.D. Va. 2004) ("The absence of an objection does not absolve the court of its responsibility to ensure that relief may be properly entered.") (internal quotes omitted).

[20]   *See, e.g.*, *In re DeLaughter*, 295 B.R. 317, 320 (Bankr. N.D. Ind. 2003) ("It is not the court's responsibility to apprise counsel of what may be going on. . . . It is counsel's responsibility to monitor the progress of their cases by checking the court's docket.").

[21]   Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

courts to act as roving commissions to do equity."[22] Although the Court certainly acknowledges the applicability of equitable powers and the doctrine of "relation back" in particular contexts, the Debtor's statutory duty under § 521(a)(1) to file certain documents is both clear and unforgiving. In this case, either all pay advices received by the Debtor were timely filed with the Court or they were not. They were not, and specific consequences follow therefrom. The Court simply cannot do violence to a specific statutory scheme in the name of equity.

**B.      Motion to Vacate Dismissal**

Even if the case were automatically dismissed by operation of the statute, the Debtor makes a final argument that the Court still has discretion to vacate the dismissal on a theory of excusable neglect. Although *Fawson* dealt specifically with papers either styled or treated as motions to extend the time to file pay advices, the only distinction between a motion to extend time in an automatically dismissed case and a motion to vacate an automatic dismissal is purely semantic. As such, the reasoning of *Fawson* regarding excusable neglect in the context of FED. R. BANKR. P. 9006(b) is equally apposite here in the context of FED. R. BANKR. P. 9024 which incorporates FED. R. CIV. P. 60(b).[23]

Rule 60(b) provides in relevant part that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a **final judgment, order, or proceeding** for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . .

---

[22]     *Southmark v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1116 (5th Cir. 1995) (internal quotes omitted).

[23]     The reported decisions issued since *Fawson* further support this conclusion. *See In re Ott*, --- B.R. ----, No. 05-52803-SBB, 2006 WL 1152339 (Bankr. D. Colo. April 12, 2006); *In re Lovato*, --- B.R. ----, No. 7-06-10152MA, 2006 WL 1236713 (Bankr. D.N.M. May 8, 2006); *In re Williams*, 339 B.R. 794 (Bankr. M.D. Fla. 2006).

. ." (emphasis added). Quite simply, an automatic statutory dismissal is not the kind of action contemplated by Rule 60(b) and therefore cannot form the basis for any relief requested under Rule 60(b).[24] Even if it were, however, Rule 60(b) could not be used to bypass the strict statutory scheme established by § 521(a)(1) and (i).[25]

### III.  CONCLUSION

Although this Court said as much in *Fawson*, it cannot be overstated that the BAPCPA presents many new challenges to everyone involved in the practice of bankruptcy law. The duties charged to debtors, attorneys, trustees, and courts may be burdensome or require significant additional attention to detail, but they are statutorily required and cannot be taken lightly. For better or worse, a harsh result is not the same as an absurd result, and it is not absurd to think that Congress intended harsh results when the dictates of the BAPCPA are not followed. The Motion is DENIED, and a separate Order to this effect shall issue.

------------------------------------------END OF DOCUMENT-------------------------------------------



---

[24]     *See, e.g.*, *In re Win Trucking, Inc.*, 236 B.R. 774 (Bankr. D. Utah 1999) (finding Rule 60(b) inapplicable to requested relief from failure to file a small business election without a final judgment or order to set aside); *Hulson v. Atchison, T. & S. F. Ry. Co.*, 27 F.R.D. 280, 284 (N.D. Ill. 1960) ("The word 'proceeding' following 'final judgment, order' must be confined to judicial determinations similar to the class of words specifically described and the general word may not be used to enlarge the class which is specifically described. The rule of ejusdem generis should be applied.").

[25]     *See, e.g.*, *Bill Roderick Distrib., Inc. v. A.J. Mackay Co. (In re A.J. Mackay Co.)*, 50 B.R. 756, 759 (D. Utah 1985) ("Fed. R. Civ. P. 60(b), which allows revocation of prior judgments and orders, cannot be used to bypass the strict requirements of § 1144 [regarding revocation of a confirmation order]."); *Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1198-99 (10th Cir. 2003) (contrasting temporary vacatur of a discharge order versus statutorily prescribed revocation under § 1328(e)); *In re Rickel & Assocs., Inc.*, 260 B.R. 673, 678 (Bankr. S.D.N.Y. 2001) ("A bankruptcy court cannot exercise its equitable powers outside of the confines of the Bankruptcy Code, or disregard its specific commands. Consequently, it cannot modify a plan under § 105(a), and produce results at odds with the specific provisions of § 1127(b). Nor can it do so under Fed. R. Civ. P. 60(b). While a court can modify a confirmation order under Rule 60(b), the Rules cannot provide a remedy that the Bankruptcy Code has substantively foreclosed. Hence, Rule 60(b) cannot be invoked to bypass § 1127(b).") (internal citations omitted).

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION DENYING MOTION TO FIND COMPLIANCE WITH 11 U.S.C. § 521 OR, IN THE ALTERNATIVE, MOTION TO VACATE ORDER OF DISMISSAL** will be effected through the Bankruptcy Noticing Center to each party listed below.

Kristi Lyn Wilkinson
4815 South 3700 West
Roy, UT 84067
    *Debtor*

Brian D. Johnson
Brian D. Johnson, P.C.
290 25th Street
Room 208
Ogden, UT 84401
    *Counsel for Debtor*

Kevin R. Anderson
405 South Main Street
Suite 600
Salt Lake City, UT 84111
    *Chapter 13 Trustee*

ORDER SIGNED